UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LESLIE MACKINNON, )<br><br>Plaintiff, )<br><br>vs. )<br><br>LINBECK, KENNEDY & ROSSI, )<br>FRED WILLIAMS, INC., and )<br>JAMES J. KEENAN, )<br><br>Defendants. ) | Civil Action No. 05-11555-JLT |

## TRIAL BRIEF ON BEHALF OF
## DEFENDANTS FRED WILLIAMS, INC. AND LINBECK, KENNEDY & ROSSI

Defendants, Fred Williams, Inc. ("Fred Williams") and Linbeck, Kennedy & Rossi ("Linbeck") (collectively "Defendants"), submit this trial brief pursuant to the Court's August 24, 2006, order.

### Procedural Background

Leslie MacKinnon ("MacKinnon" or "Plaintiff") initially filed suit in Middlesex Superior Court on or about June 9, 2005, alleging claims of sexual harassment and gender discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et. seq. (Title VII) and Massachusetts General Laws, Chapter 151B, Section 1, et seq. (151B). MacKinnon also brought claims of sexual harassment, intentional infliction of emotional distress, and assault and battery against individual defendant James Keenan. Defendants removed

the civil action to this Court on July 22, 2005.  Separately, MacKinnon pressed criminal charges against Keenan individually; that case was tried in December 2004 to a not guilty verdict.

### Facts

In late October 2002, a team of approximately five Fred Williams employees were working as mechanical contractors at a jobsite located at 780 Memorial Drive in Cambridge, Massachusetts.  Defendant Linbeck was the general contractor for the project and defendant Fred Williams was among a number of subcontractors on the site.  Also on the jobsite, working as a dry wall taper for subcontractor Sweeney Dry Wall, was plaintiff Leslie MacKinnon.

MacKinnon has given three statements under oath with respect to the circumstances underlying her claims in this action: first, a written account submitted to the Massachusetts Commission Against Discrimination ("MCAD") in connection with her charge filed with that agency; second, her testimony at the criminal trial of James Keenan; and third, her deposition in the present case.  There are a number of inconsistencies in MacKinnon's various versions of the events, but below is a summary of the facts as the Defendants understand them.

The first incident about which MacKinnon complains is an interaction in late October 2002 with Fred Williams employee James Keenan.  MacKinnon was performing dry wall work in a narrow hallway by the bathroom when Keenan came out of the bathroom and attempted to pass her.  Because MacKinnon was squatting in the small space with her tools, Keenan was not

2

able to get by her and waited for her to move. Rather than allow him to pass, MacKinnon maintained her squat, looked up at Keenan, and said, "get your fucking balls out of my face." According to some accounts, Keenan, taken aback by her hostile remark, fired back at MacKinnon with some colorful language of his own. There is no agreement on exactly what, if anything, Keenan said, however, or even whether he in fact responded to MacKinnon at all. According to one version of the plaintiff's (in her deposition testimony) Keenan made no comment immediately, but came back and made a vulgar statement to her a few minutes later. In any event, Keenan reported the incident almost immediately to his foreman on the job, Francis Gately.

Shortly after the above incident, both MacKinnon and Keenan were waiting in line to purchase items from a coffee truck that made regular stops at the jobsite during breaks. There were many other workers in line as well, and several were positioned between Keenan and MacKinnon. According to MacKinnon, there was another heated exchange with Keenan in the line where he again insulted her and allegedly spat on her, before walking away yelling obscenities. MacKinnon's version of events is entirely uncorroborated by the multiple eye witnesses at the coffee truck, however, who testify - to the man - that the only interaction between Keenan and MacKinnon in the coffee line was a conversation held in a normal tone – no yelling, no vulgar language, and certainly no spitting.

Later that same afternoon, after several Fred Williams employees including Keenan had passed by her work area without incident, Ms.

3

MacKinnon stated to Francis Gately as he walked by that he should "get [Keenan] laid." Gately did not respond to MacKinnon's comment.

That was the sum total of the interaction between Ms. MacKinnon and Mr. Keenan on the jobsite. (MacKinnon claims that Keenan insulted her on several other occasions, but there is no evidence to corroborate that claim). Believing the incidents to be nothing more than a spat between workers on the construction site, not an uncommon occurrence in the industry, Gately did not report them to his superiors at Fred Williams.

On November 13, 2002, Tim Manning, Fred Williams' Vice President and Project Manager, received a telephone call from Bill Moore, Linbeck's manager in charge of the Memorial Drive jobsite, asking him to come to the jobsite to discuss an issue with a Fred Williams employee. This was the first Manning had heard of the matter, and he went to the jobsite to meet with Moore as requested. At the meeting, which MacKinnon, Manning, Moore, MacKinnon's union agent, and several others attended, it was decided that both Keenan and MacKinnon would be transferred to different jobsites to avoid any future conflicts. MacKinnon was explicitly asked whether she would be satisfied with the transfer from the site as a resolution of the matter and, after receiving assurances that she would be able to find work at another site without missing any time, both MacKinnon and her union agent agreed to the resolution. Following the meeting, both Keenan and MacKinnon were transferred off of the job, and none of the defendants heard anything further about the dispute until MacKinnon filed her complaint with the MCAD.

**Legal Issues**

**MacKinnon's Prima Facie Case**

This case presents allegations of co-worker sexual harassment, in the form of a hostile work environment claim, by a non-employee against a non-supervisor, his employer, and the overall project's general contractor. As laid out above, it is undisputed both that Leslie MacKinnon was never an employee of either Fred Williams or Linbeck, and that James Keenan never served in a supervisory capacity for either of these defendants. Thus, in order for the plaintiff to prevail in this scenario, she must prove each of the following elements by a preponderance of the evidence:

1. That she was subjected to hostile or abusive conduct which was sufficiently severe or pervasive so as to alter the terms and conditions of her employment;

2. That the hostile or abusive conduct was unwelcome;

3. That the hostile or abusive conduct was based on her sex; and,

4. That she suffered damages as a result of the harassing conduct.

In addition, the plaintiff must demonstrate both that the environment is one that she herself subjectively perceived as hostile and abusive, and also that a reasonable person would likewise find it hostile.

MacKinnon is unable to prove even one of the four required elements of sexual harassment listed above. With respect to the first element, measuring the severity and pervasiveness of the conduct at issue, it is important to note that neither Title VII nor Massachusetts chapter 151B are "clean language

5

acts" mandating perfect manners or behavior at the workplace. See Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983) ("Title VII is not a clean language act, and it does not require employers to extirpate all signs of centuries-old prejudices"); Mullenix v. Forsyth Dental Infirmary For Children, 965 F. Supp. 120, 155 (D. Mass. 1996) (same as to c. 151B). While the line that separates the mildly offensive and vulgar from the deeply offensive and sexually harassing is not always bright, it is clear that "occasional vulgar banter tinged with sexual innuendo, of coarse or brutish workers" does not rise to the level of a hostile work environment. Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995). Indeed, workplace harassment does not automatically constitute sex discrimination merely because the words used have sexual content or connotations. See Shepherd v. Slater Steels Corp., 168 F.3d 998, 1008 (7th Cir. 1999) citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998); Mullenix v. Forsyth Dental Infirmary For Children, 965 F. Supp. 120, 155 (D. Mass. 1996) ("chapter 151B does not ordinarily apply to the sporadic use of sexually offensive words in the workplace"). In this case, nothing Keenan even allegedly said to Ms. MacKinnon properly rises to the level of actionable harassment under the law.

Additionally, even speech or conduct that might be considered hostile or abusive in one workplace may not necessarily be perceived as such in a different workplace. As the Tenth Circuit has noted under similar circumstances, "[i]n the real world of construction work, profanity and vulgarity are not perceived as hostile or abusive. Indelicate forms of expression

6

are accepted or endured as normal human behavior...we must [therefore evaluate plaintiff's] claim of gender discrimination in the context of a blue collar environment where crude language is commonly used by male and female employees. Speech that might be offensive or unacceptable in a prep school faculty meeting, or on the floor of Congress, is tolerated in other work environments." Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir. 1995). The context of the environment in which MacKinnon was working, a multi-trade and multi-employer construction site, must be kept in mind in evaluating the totality of the circumstances and weighing the severity and pervasiveness of the comments she complains of.

As to the second element of plaintiff's prima facie case, that the conduct complained of was "unwelcome," the evidence will show that throughout her brief interactions with Keenan and others on the jobsite, MacKinnon consistently "gave as good as she got." Where, as here, a plaintiff solicits or participates in the hostile or abusive conduct complained of, by provoking the alleged harasser to respond or otherwise engaging in the give and take, the conduct will generally not be considered unwelcome.

Third, the plaintiff must demonstrate that the conduct was directed at her because she is female. The law protects the plaintiff only against discrimination or harassment that is directed against her because of her gender and does not cover conflict derived from unrelated interpersonal strife. See Hartsell v. Duplex Prods., 123 F.3d 766, 772 (4th Cir. 1997) ("only harassment that occurs because of the victim's gender is actionable"); Stahl v.

7

<u>Sun Microsystems, Inc.</u>, 19 F.3d 533, 538 (10th Cir. 1994) ("If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment"). MacKinnon can demonstrate no nexus between her interaction with Keenan and her gender. Instead, the incidents described above were ignited by plaintiff's own confrontational attitude and outbursts.

Finally, with respect to proof of damages proximately caused by the hostile working environment, plaintiff has already admitted that she suffered no loss of work or pay as a result of the alleged harassment or her transfer off of the Memorial Drive jobsite. <u>See</u> Plaintiff's Initial Disclosures at page 4. Thus, there is no issue of back pay, front pay, or other "hard" damages; her claim for damages rests entirely on her attenuated claims of emotional distress.

## **<u>Employer Liability</u>**

With respect to liability on the part of defendants Fred Williams and Linbeck, the plaintiff's claims of sexual harassment face additional hurdles. After proving each of the elements of harassment discussed above, the plaintiff must also demonstrate an additional element in order to impute liability for such non-supervisor harassment to defendants Linbeck and/or Fred Williams. MacKinnon must demonstrate that management-level employees of these companies either knew or should have known of the harassment, and that they failed to take prompt and appropriate action to stop it. <u>See</u> <u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 736 (1st Cir. 2001); <u>Danco, Inc. v. Wal-Mart Stores, Inc.</u>, 178 F.3d 8, 16 (1st Cir. 1999). MacKinnon cannot meet this burden.

The evidence will show that as soon as management at Fred Williams and Linbeck became aware of the allegations of harassment as to Keenan, they scheduled a meeting with the key players involved and decided – right then and there - to transfer both Keenan and MacKinnon off of the job site to avoid any future conflict.  From that moment forward, there were no further interactions or incidents between the two.  The law has expressly recognized the transfer of either the alleged harasser or the complainant to another location as an appropriate remedial response from an employer confronted with allegations of sexual harassment.  See Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992), aff'd, 511 U.S. 244 (1994); Silverman v. Johnson, 2004 U.S. Dist. LEXIS 19767 (D. Ill. 2004) ("the offer of a transfer to another department, which would result in no material alteration of Plaintiff's employment conditions, constitutes an acceptable remedial response by an employer"); Norman v. Lipscomb Oil Co., 1998 U.S. Dist. LEXIS 6879 (D. Miss. 1998) (transfer of plaintiff to another store following her complaint of sexual harassment deemed prompt remedial action, reasonably calculated to end the sexual harassment).

Further, the law does not require an employer to demonstrate that it succeeded in preventing all harassing behavior in order to prove that it responded appropriately.  See, e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000) ("employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting . . . harassing conduct."); Rutledge v. Macy's E., Inc.,

9

2001 U.S. Dist. LEXIS 18684 (D. Me. 2001) ("An employer need only exercise reasonable care in preventing and correcting harassing conduct; it need not prove success in doing so."). The test is merely whether the employer took steps reasonably calculated to end the harassment. In any case, however, here Fred Williams and Linbeck indisputably were successful in resolving the issue.

## Conclusion

In sum, this was a routine dispute between two workers on a construction site, a dispute provoked not by gender but by confrontational people in an environment where some degree of profanity is simply the order of the day. Further, the situation was dealt with swiftly and effectively by both Linbeck and Fred Williams, shortly after they were made aware of the problem and had the information necessary to act. Both Keenan and MacKinnon were transferred off of the job site, neither of them lost either work or pay as a result of the transfers, and there were no further incidents or interactions between them.

### Requested Jury Instructions

1. Defendants' Proposed Jury Instructions on General Matters are attached hereto at Tab 1.

2. Defendants' Proposed Jury Instructions on Substantive Matters are attached hereto at Tab 2.

3. Defendants' Proposed Special Verdict Form is attached hereto at Tab 3.

### Requested Voir Dire Questions

Defendants respectfully request that the Court ask the following question of prospective jurors: "Have you or a family member ever been the victim of sexual harassment?"

Respectfully submitted,

FRED WILLIAMS, INC. and
LINBECK, KENNEDY & ROSSI

By their attorneys,


/s/Eben A. Krim_____
Mark W. Batten, BBO #566211
Eben A. Krim, BBO # 652506
Proskauer Rose LLP
One International Place
Boston, MA 02110
(617) 526-9850


Dated:  September 13, 2006


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record,  by means of either the electronic filing system or first-class mail, postage paid, this 13th day of September, 2006.


/s/Eben A. Krim_____
Eben A. Krim

**TAB 1**

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LESLIE MACKINNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LINBECK, KENNEDY & ROSSI, | ) |
| FRED WILLIAMS, INC., and | ) |
| JAMES J. KEENAN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 05-11555-JLT

## **DEFENDANTS' PROPOSED JURY INSTRUCTIONS ON GENERAL MATTERS**

Defendants, Fred Williams, Inc. ("Fred Williams") and Linbeck, Kennedy & Rossi ("Linbeck") (collectively "Defendants"), respectfully request that the Court instruct the jury on the law as set forth in the attached instructions.

Respectfully submitted,

FRED WILLIAMS, INC. and
LINBECK, KENNEDY & ROSSI

By their attorneys,

/s/Eben A. Krim_____
Mark W. Batten, BBO #566211
Eben A. Krim, BBO # 652506
Proskauer Rose LLP
One International Place
Boston, MA 02110
(617) 526-9600

Dated: September 13, 2006

2

# I.

## FUNCTION OF COUNSEL[1]

It was the duty of both lawyers in this case to object when the other side offered evidence which that lawyer believed was not admissible under our rules of evidence. They also had an obligation to ask to speak to me at the judge's bench about questions of law, which the law requires me to rule on out of your hearing.

The purpose of such objections and rulings is not to keep relevant information from you. Just the opposite: they are to make sure that what you hear is relevant to this case, and that the evidence is presented in a way that gives you a fair opportunity to evaluate its worth.

You should not draw any inference, favorable or unfavorable, to any attorney or his client for objecting to proposed evidence or asking me to make such rulings. That is the function and responsibility of the attorneys here.

---

[1] Adapted in part from L. B. Sand, 1. S. Siffert, W. P. Loughlin and S.A. Reiss, Model Federal Jury Instructions §§ 2-10 and 2-9 (1985).

## II.

## CONDUCT OF JURORS[2]

This is an important case, as are all cases that come before judges and juries, because all cases involve the rights and interests of individuals or entities.

You are to conduct your duty as jurors in an atmosphere of complete fairness and impartiality, without bias, prejudice or sympathy for or against Plaintiff or Defendants.  The fact that one or more parties are large companies should not affect your decision.  All persons and entities, whether big or small, are entitled to the same fair and conscientious consideration.  All parties stand as equals before the bar of justice.  You are to approach your duties coolly and calmly, without emotion and without being influenced by sympathy or prejudice for or against any party.

---

[2] 3 O'Malley, Grenig and Lee, Federal Jury Practice and Instructions § 101.01 (5th Ed. 2000); 4 Hon. Leonard B. Sand *et al.*, Modern Federal Jury Instructions  71.01(1) (2004).

### III.

### ROLE OF THE JURY[3]

As I told you at the beginning of the trial, your role is to decide and pass upon the fact issues in this case. You are the sole and exclusive judges of the facts. You determine the weight of the evidence. You appraise the credibility of the witnesses. You draw the reasonable inferences to be drawn from the evidence or lack of evidence. And you resolve such conflicts as there may be in the testimony.

With respect to any factual matters, your recollection and your recollection alone governs. Anything that counsel for the Plaintiff or counsel for Defendants may have said with respect to matters in evidence, whether while questioning witnesses or in argument, is not to be substituted for your own recollection or evaluation of the evidence. So, too, anything that I may have said during the trial or may say during these instructions as to any factual matter is not to be taken in place of your own recollection or judgment.

During the trial, I have been called upon to make rulings on various questions. There may have been objections or motions may have been made to strike answers. You are to disregard all these matters. You are to disregard the fact that an objection was made and sustained or overruled or that conferences took place. These are matters of law and, although you may have been curious about them, you should not consider them.

---

[3] 3 O'Malley, Grenig and Lee, Federal Jury Practice and Instructions § 103.01 (5th Ed. 2000); 4 Hon. Leonard B. Sand *et al.*, Modern Federal Jury Instructions ¶ 71.01(1), Instruction 71-3 (2004).

Of course, if at any time I instructed you to disregard anything that was said, then you must follow that instruction and pay no attention to it in your deliberations.  The fact that, at other times, I may have commented during the course of trial or asked questions of witnesses does not indicate any feeling of mine about the facts one way or the other. My comments were intended only to clarify the issue at hand; it will be your judgment of the evidence that exclusively governs.

# IV.

## NATURE OF THE EVIDENCE[4]

What then, does the evidence that you are about to consider consist of? It is the testimony of witnesses who appeared before you, together with documents and other objects that may have been received into evidence. Evidence is also admissions and stipulations of fact. Statements and arguments of counsel or the Plaintiff while acting as his own counsel are not evidence.

The law recognizes two types of evidence, direct and circumstantial evidence. Direct evidence is where a person testifies as to what they themselves saw or heard or that which they have knowledge of by virtue of their own senses. Circumstantial evidence consists of proof of facts and circumstances from which, in terms of common experience, one may reasonably infer the ultimate fact sought to be established. Such evidence, if believed, is of no less value than direct evidence. A claim must be established by the party bearing the burden of proof for that particular claim, and either circumstantial or direct evidence may be used.

Let me give you an example of circumstantial evidence. Suppose that in this courtroom there were no windows to the outside so you could not see what the weather was like, and when you came in this morning it was a fine, sunny day. We go ahead with the trial for two or three hours and then the door of the

---

[4] 4 Hon. Leonard B. Sand *et al.*, Modern Federal Jury Instructions ¶ 71.01(1), Instruction 71-3 (2004); 3 O'Malley, Grenig and Lee, Federal Jury Practice and Instructions § 101.40 (5th Ed. 2000).

courtroom opens and in comes a person wearing a dripping raincoat and carrying a dripping umbrella.  You cannot see or hear what the weather is like outside, but from your observation of this person with the dripping raincoat and umbrella, you may draw an inference as to what has happened to the weather outside.  This is an example of circumstantial evidence.  It consists of circumstances which by common experience one may reasonably infer an ultimate fact sought to be established.

I have spoken to you of inferences to be drawn from the evidence.  This is what the law means when it speaks of inferring one fact from another. An inference is the deduction or conclusion that reason and common sense prompt a reasonable mind to draw from facts that have been proven by the evidence.  Not all logically possible conclusions are legitimate or fair inferences.  Only those inferences to which the mind is reasonably led or directed are fair inferences from direct or circumstantial evidence in the case.  Whether or not to draw a particular inference is of course a matter exclusively for you, as are all determinations of fact.

5508/27615-001 Current/8781509v1

## V.

### CREDIBILITY OF WITNESSES[5]

Now I come to one of the more important issues for all juries in any trial, the issue of credibility.

You must now consider whether each witness was both truthful and accurate. A witness could believe that he or she was being truthful, yet be mistaken and not able to recall facts accurately. Also, a witness could take the oath and still intentionally testify falsely.

I am going to give you a few general instructions as to how you go about determining whether witnesses are credible and reliable. I told you at the beginning of this trial that it was important for you to listen and observe carefully the witnesses as they testified and to think about their testimony as they gave it.

You must now consider whether the witnesses told the truth and whether they knew what they were talking about. How do you determine that? It is really just a matter of your using your common sense, your good judgment and your experience.

First of all, consider how good an opportunity the witness had to observe or hear what he or he testified about. The witness may be honest, but mistaken. How did the witness's testimony impress you? Did the witness appear to be testifying honestly, candidly? Were the witness's answers direct

---

[5] 4 Hon. Leonard B. Sand *et al.*, Modern Federal Jury Instructions ¶ 76.01(1), Instruction 76-1 (2004)

9

or evasive?  Consider the witness's demeanor, his or him manner of testifying.

Consider the strength and accuracy of the witness's recollection.  Consider

whether any outside factors, like emotional involvement or illegal substances,

may have affected a witness's ability to perceive events.  Consider the

substance of the testimony.  Decide whether or not a witness was

straightforward, or whether he or she attempted to conceal anything.  How

does the witness's testimony compare with other evidence in the case?  Is it

corroborated or is it contradicted by other evidence?  If there is a conflict,

which side seems more reliable?

In addition, you may consider whether a witness had any possible bias,

any relationship to a party, any motive to testify falsely or any possible interest

in the outcome of the case.  Such a bias or relationship does not necessarily

make the witness unworthy of belief.  These are simply factors that you may

consider.

If you find that a witness has testified falsely as to any material fact or if

you find that a witness has been previously untruthful when testifying under

oath or otherwise, you may reject that witness's testimony in its entirety or you

may accept only those parts that you believe to be truthful or which are

corroborated by other independent evidence in the case.

It is for you, the jury, and for you alone, not the lawyers, not any of the

witnesses, and not me as the judge, to decide the credibility of witnesses who

appeared here and the weight which their testimony deserves.

5508/27615-001 Current/8781509v1

As I told you at the beginning of the trial, you do not leave your common sense, good judgment or your life experiences behind you when you walk into the courtroom.  You carry that background into the jury room during your deliberations.  Please remember, however, that you may not use your experience and common sense to fill in or create evidence that does not exist. You use them only to draw reasonable inferences from proven fact or to weigh and evaluate the evidence provided during the trial.

5508/27615-001 Current/8781509v1

## VI.

### INTEREST IN OUTCOME[6]

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or him testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness' interest has affected his or her testimony.

---

[6]  4 L. Sand, *et al.*, Modern Federal Jury Instructions ¶ 76.01, Instruction 76-3 (3d ed. 2004).

## VII.

## PLAINTIFF'S BURDEN OF PROOF[7]

The burden is on the Plaintiff to prove every essential element of a claim by a preponderance of the evidence. If the proof should fail to establish any essential element of the Plaintiff's claim by a preponderance of the evidence, you should find for the Defendants as to that claim. To establish by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence, as when considered and compared with that opposed to it, has more convincing force and produces in your minds belief that what is sought to be proved is more likely true than not. If, on any issue in this case, the evidence is equally balanced, you cannot find that the issue has been proven by a preponderance of the evidence. The rule does not, of course, require proof to an absolute certainty since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[7] Federal Employment Jury Instructions, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:250.20, *citing* Williams v. Eau Claire Pub. Sch., 397 F.3d 441, 444 (6th Cir. 2005); 3C O'Malley, Grenig and Lee, Federal Jury Practice and Instructions § 171.61 (5th ed. 2000).

13

# VIII.

## USE OF DEPOSITION TESTIMONY TO IMPEACH WITNESSES[8]

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness had said or done something inconsistent with the witness' present testimony. Sometimes this is shown through contrary evidence from deposition testimony read into the record that is in conflict with what the witness has testified to in court. If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness whatever weight and credibility, if any, you may still think it deserves.

You may consider evidence that at some other time a witness not a party to this action has said or done something which is inconsistent with the witnesses' testimony at trial. You may consider such evidence solely for the purpose of judging the credibility of the truth of any such statement. Where, however, the witness is a party to the case, and by such statement or other conduct admits some fact or facts against his or her interest, such statement or other conduct may be considered as evidence of the truth of the facts so admitted by the party, as well as for purposes of judging the credibility of the witness.

---

[8] Federal Employment Jury Instructions, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:1112, *citing* Skaggs v. Hartford Financial Group, Inc., 2001 U.S. Dist. LEXIS 20351 (E.D. Pa. 2001).

14

## IX.

## DAMAGES - GENERALLY[9]

I will now give you instructions about how to calculate damages.

Members of the jury, the fact that I will instruct you on the issues of damages

should not be considered as indicating any view of mine as to which party is

entitled to a verdict in this case.  Instructions concerning damages are given for

your guidance in the event you should find in favor of the plaintiff by a

preponderance of the evidence in accordance with all of the instructions I have

given you.  It is for you to decide based on the evidence presented and the rules

of law I have given you whether plaintiff has met her burden of proof.  If you

decide that plaintiff has not proved by a preponderance of the evidence that

she was sexually harassed then you must find in favor of the Defendants, and I

would ask you to return your verdict at that point.  Only if you decide that

plaintiff has proven by a preponderance of the credible evidence that she was

sexually harassed, and that Defendants Fred Williams and Linbeck are liable

for that harassment, are you to consider the measure of damages.

You may award compensatory damages only for injuries that Plaintiff

proved were caused by Defendants' allegedly wrongful conduct.  The damages

you award must be fair compensation, no more and no less.  The plaintiff bears

---

[9]  Derived from *Federal Employment Jury Instructions*, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:1215 and *Standing Orders, Jury Instructions – Title VII Discrimination*, Magistrate Judge John M. Facciola, United States District Court for the District of Columbia.  See also, G.L. c. 151B, § 9; Conway v. Electro Switch Corp., 402 Mass. 385, 388 (1988); Rombola v. Cosindas, 351 Mass. 382, 385 (1966); Agoos Leather Coso v. Am. & Foreign Ins. Co., 342 Mass. 603, 608 (1961).

the burden of proof on damages. Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages. The award must be based on just and reasonable inferences from the evidence.

You may award compensatory damages to the plaintiff for emotional pain and suffering, inconvenience, and mental anguish, if you find that they were caused by Defendants' discrimination.[10]  In determining the amount of damages, if any, you should be guided by dispassionate common sense.  You may not consider the cost to Plaintiff of hiring an attorney.  Attorney's fees will be determined by the court, if necessary, and may not be included in your damages award.

---

[10]  Defendants do not believe the jury should be charged on back pay, front pay or punitive damages.

# X.

## JURY DELIBERATIONS[11]

Your verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges — judges of facts.  Your sole interest is to seek the truth from the evidence in the case.  You all took an oath when this case started that you would — without any fear or favor to any party in this lawsuit — consciously and truthfully try the issues before you according to the evidence as you determine it to be here in open court.  I have no doubt that you will discharge your responsibility carefully and conscientiously.

---

[11]  Hon. Leonard B. Sand *et al.*, *Modern Federal Jury Instructions* ¶ 78.01(1), Instruction 78-1 (2004).

# XI.

## SPECIAL VERDICT[12]

Your verdict will take the form of a special verdict comprised of your answers to written questions.  Your answer to each question must reflect your unanimous verdict on each question.  In a few moments I will give you the verdict form with the questions for you to answer and you will retire to deliberate your decision.

---

[12]  See 4 Hon. Leonard B. Sand *et al.*, *Modern Federal Jury Instructions* ¶ 78.01(1), Instruction 78-9 (2004).

5508/27615-001 Current/8781509v1

**TAB 2**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LESLIE MACKINNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 05-11555-JLT |
| ) | |
| LINBECK, KENNEDY & ROSSI, ) | |
| FRED WILLIAMS, INC., and ) | |
| JAMES J. KEENAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **DEFENDANTS' PROPOSED JURY INSTRUCTIONS ON MATTERS OF**

## **SUBSTANTIVE LAW**

Defendants, Fred Williams, Inc. ("Fred Williams") and Linbeck, Kennedy & Rossi ("Linbeck") (collectively "Defendants"), respectfully request that the Court instruct the jury on the law as set forth in the attached instructions.

Respectfully submitted,

FRED WILLIAMS, INC. and
LINBECK, KENNEDY & ROSSI

By their attorneys,

/s/Eben A. Krim_____
Mark W. Batten, BBO #566211
Eben A. Krim, BBO # 652506
Proskauer Rose LLP
One International Place
Boston, MA 02110
(617) 526-9600

Dated: September 13, 2006

## I

## STATUTORY PROVISIONS[1]

This lawsuit has been brought under Title VII of the Civil Rights Act of 1964 and the Massachusetts anti-discrimination statute, Chapter 151B. These statutes provide that it shall be an unlawful employment practice for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's sex. Sexual harassment by an employer or an agent of an employer is considered to be discrimination on the basis of sex in violation of these statutes.

---

[1] See 42 U.S.C.A. §§ 2000e-2, 2000e-3; M.G.L. c. 151B.

## II

## BUSINESS JUDGMENT

You may not return a verdict for the plaintiff just because you might disagree with the actions of the Defendants, Fred Williams and Linbeck, or believe such actions to be harsh, inappropriate or unreasonable.[2]

In assessing the plaintiff's claims of sexual harassment as against Fred Williams and Linbeck, you should focus on the ***motivation*** of the employer, and not its business judgment. You must not allow your beliefs or feelings about the fairness or correctness of the Defendants' decisions to enter into your decision-making process. You are not to decide what you, as an employer, would have done under the same circumstances, or whether you approve of the decision. Your task is not to judge whether Fred Williams' or Linbeck's actions or inaction was right or wrong or whether they should have acted in a different way, but only whether their acts or omissions were motivated by unlawful discrimination against the plaintiff because of her gender.

---

[2] <u>Kelley v. Airborne Freight Corp.</u>, 140 F.3d 335, 351 n.6 (1st Cir. 1998); <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979). <u>See</u> <u>also</u>, MCLE'S MA *SUPERIOR COURT CIVIL JURY INSTRUCTIONS*, § 5.2(g), Supplement 2003.

## III

## ELEMENTS OF SEXUAL HARASSMENT BASED ON HOSTILE WORK ENVIRONMENT[3]

Plaintiff accuses the Defendants Fred Williams and Linbeck of permitting sexual harassment in violation of Federal and Massachusetts law.  In order to succeed on this claim, Plaintiff must persuade you, by a preponderance of the evidence, of all five of the following factors:

*First*, that she was intentionally subjected to unwelcome harassment;

*Second*, that the harassment was based upon her sex, that is, that she was harassed because the plaintiff is a woman;

*Third*, that the harassment was sufficiently severe and pervasive to unreasonably interfere with her work performance or alter the terms or conditions of her employment by creating an intimidating, hostile, humiliating, or sexually offensive work environment;[4]

*Fourth*, that management level employees of Defendants either knew or should have known of the harassment; and

*Fifth*, that management level employees of Defendants failed to take prompt and appropriate remedial action.

---

[3] Derived in part from *Federal Employment Jury Instructions*, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:920.10 and from *Proposed Civil Pattern Jury Instructions – Employment Discrimination (Disparate Treatment)*, Judge Hornby, United States District Court, District of Maine, §2.3 (2004).  See also, O'Rourke v. City of Providence, 235 F.3d 713, 736 (1st Cir. 2001); Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 854-55 (1st Cir. 1998).

[4] G.L. c. 151B, §1 (18)(b); College-Town, Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 162 (1987); Ruffino v. State St. Bank & Trust Co., 908 F.Supp. 1019, 1036 (D.Mass. 1995).

Unwelcome harassment means conduct that is uninvited and offensive or unwarranted.

Indiscriminate, even-handed use of offensive language toward both males and females is not alone discriminatorily hostile. Liability on this claim requires more than mere utterance of an offensive remark. There is no mathematically precise test for determining whether words and gestures meet the standard. Instead, you must consider the evidence as a whole and the totality of the circumstances, such as the nature of the conduct and the context in which it occurred.

If the plaintiff invites, solicits, or participates in the hostile or abusive conduct, you may determine that the conduct is not unwelcome.[5]

Plaintiff must prove that both of two consequences resulted from any unwelcome sexual harassment because of her sex:

*First*, that because of her sex, she confronted an objectively hostile work environment – in other words that the conduct in question was either so severe or so pervasive that it created an environment that a reasonable person would find hostile or abusive on the basis of gender; and

*Second*, that the plaintiff herself actually perceived the work environment to be hostile or abusive because of her gender.

---

[5] American Bar Association, Model Jury Instructions – Employment Litigation, second edition, 1.04[3].

IV

**Not a "clean language statute"**

Neither Title VII nor Massachusetts chapter 151B are "clean language acts."[6] They do not require employers to purge the work place of all vulgarity. While the line that separates the mildly offensive and vulgar from the deeply offensive and sexually harassing is not always bright, it is clear that "occasional vulgar banter tinged with sexual innuendo, of coarse or brutish workers" does not rise to the level of a hostile work environment.[7] Indeed, workplace harassment does not automatically constitute sex discrimination merely because the words used have sexual content or connotations.[8]

---

[6] Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983) ("Title VII is not a clean language act, and it does not require employers to extirpate all signs of centuries-old prejudices"); Kantar v. Baldwin Cooke Co., 1995 U.S. Dist. LEXIS 17330 (D. Ill. 1995); Mullenix v. Forsyth Dental Infirmary For Children, 965 F. Supp. 120, 155 (D. Mass. 1996) (same as to MGL c. 151B).

[7] Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995).

[8] Shepherd v. Slater Steels Corp., 168 F.3d 998, 1008 (7th Cir. 1999) citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998); Mullenix v. Forsyth Dental Infirmary For Children, 965 F. Supp. 120, 155 (D. Mass. 1996) ("chapter 151B does not ordinarily apply to the sporadic use of sexually offensive words in the workplace").

## V

## Context of the Workplace

You should consider the totality of the circumstances in evaluating the severity and pervasiveness of any harassing conduct plaintiff may have been exposed to. You should further evaluate both whether the conduct in question was either so severe or so pervasive that it created an environment that a reasonable person would find hostile or abusive; and whether plaintiff herself in fact perceived such a hostile environment.

In doing so, you may consider the context of the workplace in which the events took place, and the degree to which conduct such as vulgar language and the use of profanity would normally be considered offensive at that particular workplace. Speech or conduct that might be considered hostile or abusive in one workplace may not be perceived as hostile or abusive in a different workplace.[9]

---

[9] Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir. 1995) ("In the real world of construction work, profanity and vulgarity are not perceived as hostile or abusive. Indelicate forms of expression are accepted or endured as normal human behavior...we must evaluate Gross' claim of gender discrimination in the context of a blue collar environment where crude language is commonly used by male and female employees. Speech that might be offensive or unacceptable in a prep school faculty meeting, or on the floor of Congress, is tolerated in other work environments.")

## VI

## HOSTILE ENVIRONMENT HARASSMENT[10]

To establish the existence of a sexually hostile work environment, the Plaintiff must prove by a preponderance of the evidence that the conduct was sufficiently severe and pervasive  that it had the purpose or effect of unreasonably interfering with the employee's work performance and of creating an intimidating, hostile, or offensive work environment.

It cannot consist of trivial or isolated remarks and incidents, or simply coarse, rude, or boorish behavior.[11]  A plaintiff must be able to show more than a "mere utterance of an…epithet which engenders offensive feelings in an employee," as this "does not sufficiently affect conditions of employment."[12]

The elements which comprise a claim of sexual harassment based on the existence of a hostile environment include[13]:

1.    the plaintiff must belong to a protected class;
2.    the plaintiff was subject to unwelcome sexual harassment;
3.    the harassment complained of was based upon sex;
4.    the harassment complained of affected a term, condition, or privilege of employment; and
5.    the employer knew or should have known of the harassment and failed to take prompt, effective remedial action.

---

[10] Federal Employment Jury Instructions, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:70.30.

[11] Federal Employment Jury Instructions, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:820, 830, citing Gaskins v. BFI Waste Servs., No. Civ.A. 02-1832, 2005 WL 1667737, at *4-5 (E.D. Va. June 17, 2005); Carter V. Rosenberg & Estis, P.C., 1998 U.S. Dist. LEXIS 4010 (S.D.N.Y. 1998).

[12] Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

[13] Shepard v. Comptroller of Pub. Accounts of Texas, 168 F.3d 871, 873 (5th Cir. 1999)

## VII

### CONDUCT THAT INTERFERES WITH AN INDIVIDUAL'S ABILITY TO PERFORM HER JOB

Proof of a hostile work environment claim requires a showing that the unwelcome sexual conduct complained about created an impediment to an employee's full participation in the workplace, altered the terms and conditions of her employment, or unreasonably interfered with her work performance.[14] The analysis centers on whether the defendants' conduct created a barrier, based solely on gender, to the plaintiff's full and untrammeled participation in the workplace.[15]

Whether conduct interferes with an individual's ability to perform her job is essentially a question of fact based on the totality of the circumstances, which include the nature, severity and pervasiveness of the conduct and the psychological harm to the employee.[16]

---

[14]  MCAD, Sexual Harassment in the Workplace Guidelines, October 2, 2002 §II(C)(4) citing College-Town Division of Interco, Inc., v. MCAD, 400 Mass. 156, 162 (1987); Mass. Gen. Laws ch. 151B §1(18)(b) (1996).

[15] Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993);  Moriearty, Adkins, Rubin and Jackson, *Massachusetts Practice – Employment Law*, Volume 45, § 8.13 (Second Ed. 2003) citing College-Town Division of Interco, Inc., 400 Mass. at 162.

[16]  See Id.

## VIII

## DISCRIMINATION ON THE BASIS OF GENDER

The law protects the plaintiff from discrimination or harassment on the basis of her gender. It prohibits only the creation of a severely and pervasively hostile work environment that is directed against plaintiff <u>because she is female</u>.[17] If you find that the plaintiff was subjected to a hostile work environment for some reason or on some basis other than her gender, including for example, her sexual orientation, your verdict must be for the defendants on plaintiff's claims.[18]

---

[17] <u>Hartsell v. Duplex Prods.</u>, 123 F.3d 766, 772 (4th Cir. 1997) ("only harassment that occurs because of the victim's gender is actionable"); <u>Stahl v. Sun Microsystems, Inc.</u>, 19 F.3d 533, 538 (10th Cir. 1994) ("If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment").

[18] Plaintiff makes no claim based on sexual orientation under Massachusetts law and no such claim is available under Title VII. <u>See</u> <u>Williamson v. A.G. Edwards & Sons</u>, 876 F.2d 69 (8th Cir. 1989) (Title VII does not prohibit employment discrimination on the basis of sexual orientation); <u>Ulane v. Eastern Airlines, Inc.</u>, 742 F.2d 108 (7th Cir. 1984).

## IX

## HOSTILE WORK ENVIRONMENT - EMPLOYER LIABILITY

When a hostile work environment is created and carried on by a co-worker or other non-supervisory employee, the employer Defendants will be responsible for permitting such behavior only if Plaintiff proves by a preponderance of the evidence that management level employees of the Defendants actually knew, or should have known, of the sexually hostile work environment, and failed to take prompt and appropriate remedial action to stop the sexual harassment.[19] To establish that the employer should have known about the harassment, the plaintiff must prove by a preponderance of the evidence that the hostile or abusive environment was so pervasive and so open and obvious that any reasonable person in management's position would have known that the harassment was occurring.[20] A Defendant need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting such conduct.[21]

---

[19] *Federal Employment Jury Instructions*, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:961; Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000) ("the defendant will ordinarily only be liable for harassment by low-level employees if management-level employees knew or should have known about it."); Kidd v. Commonwealth of Pennsylvania, 2001 U.S. Dist. LEXIS 15856 (E.D. Pa. 2001); College-Town. Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 165-67 (1987); Smith v. Brimfield Precision, Inc., 17 MDLR 1089, 1099 (1995).

[20] American Bar Association, Model Jury Instructions – Employment Litigation, second edition, 1.04[3](b) citing Crowley v. L.L. Bean, Inc., 303 F.3d 387 (1st Cir. 2002).

[21] Ortiz Fuentes v. P&G, 2006 U.S. Dist. LEXIS 60189, 30-31 (D.P.R. 2006) *citing* Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2nd Cir 2000).

X

## "SUPERVISOR" DEFINED[22]

In determining whether a given individual was a supervisor for purposes of the law, you should consider the degree to which he or she had authority over the terms and conditions of other employees' employment. The question of whether someone is a supervisor is a factual question, and should be determined based on that person's authority to affect the terms and conditions of other workers' employment. In assessing this authority, you should consider whether the employee in question had the power to hire, fire, demote, promote, transfer, or discipline other employees. Without a sufficient degree of authority, the employee in question cannot qualify as a supervisor for purposes of imputing liability to the employer.

---

[22] Moriearty, Adkins, Rubin and Jackson, *Massachusetts Practice – Employment Law*, Volume 45, § 8.13, n. 9 (Second Ed. 2005 Supplement), citing <u>Noviello v. City of Boston</u>, 398 F.3d 76, 95-96 (1st Cir. 2005) ("under both federal and state law, the question of whether someone is a supervisor is a factual question, to be determined by that person's degree of authority over the terms and conditions of the plaintiff's employment, focusing on the power to hire, fire, demote, promote, transfer or discipline; rejecting the 'broader view' of the Second Circuit, under which a supervisor can be someone with authority 'to direct an employee's work-related tasks in a way that could increase her workload or saddle her with less desirable tasks."). <u>See also</u>, <u>College-Town. Div. of Interco, Inc.</u>, 400 Mass. 156.

# XI

## KNOWLEDGE AND ACTIONS OF "MANAGEMENT LEVEL EMPLOYEES"

If you find that the Plaintiff was harassed by a co-worker or other non-management employee, in other words by someone who was not Plaintiff's supervisor, you must then decide whether management level employees at Fred Williams and/or Linbeck knew, or should have known, of the harassment and failed to take prompt remedial action. The Defendants may only be liable for harassment by such low-level employees if their management-level employees knew or should have known about it, and failed to act appropriately.[23] The Defendants need not prove that they succeeded in preventing all harassing behavior in order to prove that they exercised reasonable care in preventing and correcting harassing conduct.[24]

---

[23] See O'Rourke v. City of Providence, 235 F.3d 713, 736 (1st Cir. 2001) (finding no error in jury instruction, "[i]f it is her coworker, or coworkers, who are guilty of this harassing conduct, then the city is only liable if a superior officer knew, or should have known, of the harassment and failed to take prompt remedial action."); Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 16 (1st Cir. 1999) ("the defendant will ordinarily only be liable for harassment by low-level employees if management-level employees knew or should have known about it"); Ortiz Fuentes v. P&G, 2006 U.S. Dist. LEXIS 60189, 30-31 (D.P.R. 2006) (in order to be found liable, an employer must have failed to take appropriately remedial action).

[24] Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000) ("employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting . . . harassing conduct."); Rutledge v. Macy's E., Inc., 2001 U.S. Dist. LEXIS 18684 (D. Me. 2001) ("An employer need only exercise reasonable care in preventing and correcting harassing conduct; it need not prove success in doing so).

## XII

## HOSTILE WORK ENVIRONMENT – EMPLOYERS' OBLIGATIONS

The employer's obligation, upon its management-level employee's becoming aware of incidents or allegations of sexual harassment, is to take prompt action that is reasonably calculated to stop the harassing behavior.[25] An employer need only exercise reasonable care in preventing and correcting the harassing conduct however; whether or not the employer is ultimately successful in halting the harassing behavior is not determinative.[26]

---

[25] See e.g. Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997) (The employer's actions should be "reasonably calculated to end the harassment.").

[26] Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000) ("employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting . . . harassing conduct."); Shaw v. AutoZone, Inc., 180 F.3d 806, 812 (7th Cir. 1999) ("the law does not require success - it only requires that an employer act reasonably to prevent sexual harassment"); Rutledge v. Macy's E., Inc., 2001 U.S. Dist. LEXIS 18684 (D. Me. 2001) ("An employer need only exercise reasonable care in preventing and correcting harassing conduct; it need not prove success in doing so).

# XIII

## TRANSFER AS APPROPRIATE REMEDY

An employer's separation of the parties to alleged incidents of sexual harassment, or the transfer of one or both of the parties to an alternate work site may be an acceptable form of remedial action, reasonably calculated to stop the harassing behavior.[27]

---

[27] See Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992), aff'd, 511 U.S. 244 (1994); Silverman v. Johnson, 2004 U.S. Dist. LEXIS 19767 (D. Ill. 2004) ("the offer of a transfer to another department, which would result in no material alteration of Plaintiff's employment conditions, constitutes an acceptable remedial response by an employer") citing Saxton v. AT&T, 10 F.3d 526, 535-36 (7th Cir. 1993); Norman v. Lipscomb Oil Co., 1998 U.S. Dist. LEXIS 6879 (D. Miss. 1998) (transfer of plaintiff to another store following her complaint of sexual harassment deemed prompt remedial action, reasonably calculated to end the sexual harassment); Bennett v. Compusa, Inc., 1997 U.S. Dist. LEXIS 3735, NO. 3:96- CV-0742-P (N.D. Tex. Jan. 7, 1997)("as long as the complainant does not suffer ill effects with regard to salary or benefits, a transfer of the complainant can constitute an appropriate means of handling a sexual harassment claim.")

## XIV

## SEXUAL HARASSMENT TRAINING

There is no requirement in the law that employers conduct education or training programs on sexual harassment in any particular form or with any particular frequency.[28]

---

[28] See Cooke v. Stefani Mgmt. Servs., Inc., 250 F.3d 564, 569 (7th Cir. 2001) ("Without employer knowledge of harassing conduct, the law does not require an employer to do more than promote general anti-harassment policies and training to ensure compliance with Title VII"); MCAD, *Sexual Harassment in the Workplace Guidelines*, § V(B).

## XV

## INVESTIGATION OF SEXUAL HARASSMENT COMPLAINTS

The law does not require an employer to conduct any particular form of investigation in response to a complaint of sexual harassment.  The nature and duration of the investigation will depend on the circumstances of the complaint, including the type, severity and frequency of the alleged harassment.[29]

---

[29] Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997) ("the law does not require that investigations into sexual harassment complaints be perfect"); Pirie v. Conley Group, Inc., 2004 U.S. Dist. LEXIS 499 (D. Iowa 2004) ("Liability cannot...be premised on perceived inadequacies in the investigation as long as the employer takes prompt steps to end the harassment")MCAD, *Sexual Harassment in the Workplace Guidelines*, § VI(A), *citing* Parent v. Spectro Coating Corp., 22 MDLR 221, 226 (2000).

## XVI

## PROPER ISSUES FOR DECISION

You may not find for the plaintiff in order to reward her for her past services or because of some general feeling that she deserved better. The question for you is not whether the plaintiff was treated well, but only whether Fred Williams or Linbeck acted illegally, either in supervising James Keenan or in responding to the plaintiff's complaints of sexual harassment.[30]

---

[30] Coburn v. Pan American World Airways, Inc., 711 F.2d 339, 345 (D.C. Cir. 1983), *cert. denied*, 464 U.S. 994 (1983).

# XVII

## BACK PAY

**The Defendants contend that no back pay instruction is warranted in this case for three reasons: (1) according to First Circuit precedent, back pay and benefits are not issues for the jury in Title VII cases (see e.g. Ramos v. Roche Prods., Inc., 936 F.2d 43, 49-50 (1st Cir. 1991); (2) in this case, the evidence does not permit a reasonable jury to find that Plaintiff is entitled to back pay; and (3) the plaintiff herself admits that she did not lose any pay.  See e.g. Plaintiff's initial disclosures at page 4.  If the Court rejects this position and rules that the jury may consider back pay, then Defendants request that the Court charge the jury as follows:**

If you should find that plaintiff has met her burden of proving by a preponderance of the evidence that defendants are liable for her alleged sexual harassment, you may award her what is known as back pay.  Back pay is comprised of the plaintiff's lost earnings from the date of the adverse employment decision until today. This includes all lost bonuses, employment benefits, and health insurance benefits that would reasonably have accumulated but for the defendants' discriminatory conduct. However, you should decrease this amount by any earnings and benefits received by the plaintiff from another employer since the date of the adverse employment action.  It is at all times plaintiff's burden to prove, first that she is entitled to damages, and second, the amount of such damages.[31] A back pay award should not make a complainant more than whole.[32]

---

[31]  Conway v. Electro Switch Corp., 402 Mass. 385, 388-89 (1988); Black v. Sch. Comm. of Malden, 369 Mass. 657, 661-62 (1976).

[32]  New York & Massachusetts Motor Serv., Inc. v. Massachusetts Commn. Against Discrimination, 401 Mass. 566, 582 (1988).

19

XVIII

**PLAINTIFF'S DUTY TO MITIGATE DAMAGES**

**The Defendants contend that no mitigation instruction is needed if, as they request, the Court elects not to instruct on back pay as discussed above.  If, however, the Court rejects the Defendants' position and rules that the jury may consider back pay, then Defendants request that the Court also charge the jury on mitigation as follows:**

The plaintiff has an affirmative duty to limit her damages for lost wages by actively seeking, and accepting, employment for which she is qualified.[33] This is called mitigation of damages.  This means that in order for her to recover back pay, the plaintiff cannot sit idly by and let her damages accumulate, but rather must use reasonable diligence in finding other suitable employment. Assuming the plaintiff does find other employment, as she did in this case, the defendants are entitled to offset whatever earnings and benefits she obtained at her new employment against the amount, if any, that defendants owe her, in order to make her whole.[34]  You should therefore reduce any back pay award to the plaintiff by the amount that she earned in wages and benefits from her

---

[33] *Federal Employment Jury Instructions*, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:1340;  Sherman v. School Comm. of Whitman, 26 Mass. App. Ct. 903, 905 (1988)

[34] Town of Wayland v. Middlesex County Retirement Bd., 2000 Mass. Super. LEXIS 598 (2000).

subsequent employer(s).[35]  A back pay award should not make a complainant more than whole.[36]

---

[35]  Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480 (2000); Conway v. Electro Switch Corp., 402 Mass. 385, 389 (1988); Buckley Nursing Home v. MCAD, 20 Mass.App.Ct. 172, 185 (1985); Black v. Sch. Comm. of Malden, 369 Mass. 657, 662 (1976).

[36]  New York & Massachusetts Motor Serv., Inc. v. Massachusetts Commn. Against Discrimination, 401 Mass. 566, 582 (1988).

## XIX

## EMOTIONAL DISTRESS DAMAGES

The Plaintiff claims that she suffered emotional distress as a result of the conduct of defendants.

If you find that the Plaintiff has been discriminated against by Defendants, you may then award her reasonable damages for her emotional distress. Emotional distress includes mental pain, discomfort, indignity, depression, fear, anxiety, or humiliation suffered as a result of the discrimination.[37]  Your award, if any, however, cannot be based on speculation, sympathy, bias, passion or prejudice on your part.  Damages should be awarded only if you find that the plaintiff has proved that she suffered emotional distress and has introduced evidence from which you can make an informed judgment as to the existence, nature, duration and seriousness of the alleged distress.[38]  You may only compensate the plaintiff for emotional distress that you find a reasonable person would have suffered under the circumstances.[39]

---

[37] Labonte v. Hutchins & Wheeler, 424 Mass. 813, 824 (1997), Boumewood Hosp., Inc. v. MCAD, 371 Mass. 303, 315-17 (1976); Rombola v. Cosindas, 351 Mass. 382, 385 (1966); Agoos Leather Coso v. Am. & Foreign Ins. Co., 342 Mass. 603, 608 (1962); Franklin Publishing Co. v. MCAD, 25 Mass.App.Ct. 974, 975 (1988); Buckley Nursing Home v. MCAD, 20 Mass.App.Ct. 172, 182 (1985).

[38] Cook v. Sarni Original Dry Cleaners, 2 MDLR 1012, 1035 (1980) (reversing award of emotional distress because no findings were made of nature, extent, or duration of such distress); Moody v. Maine Cent. R. Co., 823 F.2d 693, 695 (1st Cir. 1987) (quoting W.P. Keeton, The Law of Torts, 269 (5th Ed. 1984).

[39] Payton v. Abbott Labs, 386 Mass. 540, 556-57 (1982) (recovery for reasonably foreseeable emotional distress, unless defendant aware of special factors affecting plaintiff's reaction to circumstances).

You may not award plaintiff damages for any emotional distress caused by other factors such as personal or family difficulties, medical problems, or actions taken by any of the Defendants that were not unlawful.    You also may not award plaintiff emotional distress damages based on her participation in this legal proceeding.[40]  The purpose of an emotional distress award is to compensate plaintiff for the actual mental or emotional injuries she suffered, if any, as a direct result of the unlawful conduct of Defendants, and not distress suffered because of other matters.

If the plaintiff has not proven by a preponderance of the evidence that any emotional distress she suffers was directly attributable to unlawful conduct of the defendants, then you must not award any emotional distress damages.[41]

In order to recover damages for mental and emotional distress, Plaintiff must present credible testimony with respect to the claimed mental anguish and corroboration, either by competent medical proof or by the circumstances of the case.  There must be some evidence of the magnitude of the injury, to assure that any compensatory damages are neither punitive nor arbitrary.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense.  You must use sound

---

[40] Blakey v. Continental Airlines, Inc., 992 F. Supp. 731, 736 (D.N.J. 1998) (plaintiff barred from recovering for stress caused "due to the contentiousness of [the] litigation"); Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977) ("an award for emotional harm is warranted only if there is sufficient causal connection between the respondent's illegal actions and the complaining party's injury.").

[41] Trying Employment Cases in the Superior Court, MCLE publication 1999, at 226, citing Pembaaur v. City of Cincinnati, 745 F.Supp. 466, 457 (S.D. Ohio 1990).

discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation, or guess work.[42]

---

[42]  U.S.C. § 1981a (2002); Annis v. Westchester, 136 F.3d 239, 249 (2d Cir. 1998); McIntosh v. Irving Trust Co., 887 F. Supp. 662, 665 (S.D.N.Y. 1995) (Koeltl, J.); 3 Hon. Edward J. Devitt, *et al.*, *Federal Jury Practice and Instructions* § 104.06 (4th ed. Supp. 2000).

## XX

## NOMINAL DAMAGES[43]

If you find, after considering all the evidence presented, that the plaintiff has met her burden of proving by a preponderance of the evidence that defendants are liable for her alleged sexual harassment, but that the plaintiff suffered no injury as a result of this violation or breach, you may award the plaintiff "nominal damages," such as damages of one dollar. "Nominal damages" are awarded as recognition that the plaintiff's rights have been violated. You would award nominal damages if you conclude that the only injury that a plaintiff suffered was the deprivation of her legal rights, without any resulting physical, emotional or financial damage. You may also award nominal damages if you find that the proven damages are so insignificant as not to be susceptible to reasonable translation into dollars.

You may also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing.

You may not award both nominal and compensatory damages to a plaintiff; either she was measurably injured, in which case you must award compensatory damages, or else she was not, in which case you may award nominal damages.

---

[43] 4-77 Modern Federal Jury Instructions-Civil P 77.01, Instruction 77-6 (Matthew Bender 2005); See also, Lakian v. Globe Newspaper Co., 399 Mass. 379, 383 n.7 (1987); Romano v. U-Haul Int'l, 233 F.3d 655 (1ST. Cir 2000); Magnett v. Pelletier, 488 F.2d 33, 35 (1st Cir. 1973).

Nominal damages may not be awarded for more than a token sum, such as one dollar.

## XXI

## PUNITIVE DAMAGES[44]

**Fred Williams and Linbeck contend that the evidence does not permit a reasonable jury to find that they (or either of them) engaged in conduct for which punitive damages may be awarded under applicable law. If the Court rejects this position and rules that the jury may consider punitive damages, then Defendants request that the Court charge the jury as follows:**

In addition to compensatory and nominal damages described in the earlier instructions, the law permits the jury under limited circumstances to award punitive damages. If you find for Plaintiff and find from a preponderance of the evidence that the acts of Fred Williams and/or Linbeck were undertaken maliciously or in reckless disregard for Plaintiff's right to be free from discrimination, then you may award Plaintiff such punitive damages. Punitive damages are different from compensatory damages. Unlike compensatory damages, which compensate the victim for the harm she has suffered, the purpose of punitive damages is to punish the defendant for conduct that is outrageous because of the defendants' evil motive or reckless

---

[44] Derived from *Federal Employment Jury Instructions*, Todd J. McNamara and J. Alfred Southerland, 2006 Supplement §1:1310, 1330 and 3 Devitt, Blackmar & Wolf. Federal Jury Practice and Instructions, §§ 104.07, 105.03 (4th ed. 1987). See also, TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 459-62 (1993); Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 15-20 (1991); Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 17 (1st Cir. 1999) ("The standard for punitive damages [under Title VII] is drawn from Smith v. Wade, 461 U.S. 30, 56 (1983), where the Court said that the plaintiff must show that the defendant acted with "evil motive or intent" or with "reckless or callous indifference" to the plaintiff's federally protected rights); Chavez v. Thomas & Betts Corp., 396 F.3d 1088, 1098 (10th Cir. 2005) (in order to award punative damages, the jury had to find that the acts of the Defendants were with a wanton disregard of the Plaintiff's rights, or that the acts were reckless, or oppressive, or maliciously intentional); Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 753 F.Supp. 406,412 (D.Mass. 1990); Gaskins v. BFI Waste Servs., 2005 WL 1667737, at *4-5 (E.D. Va. June 17, 2005); Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 16-17 (1998); Bain v. City of Springfield, 424 Mass. 758, 767-68 (1997); Labonte v. Hutchins & Wheeler, 424 Mass. 813, 826-27 (1997); Prosser & Keeton, *The Law of Torts*, (5th Ed. 1989, §2); Restatement (Second) of Torts § 908(2) (1979).

indifference to the rights of others. Punitive damages are intended to serve as an example or warning to other defendants not to engage in conduct of the types just described.

Punitive damages are designed to punish a defendant for conduct only where the defendants' wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with a crime. There must be circumstances of aggravation or outrage, such as spite or malice or a fraudulent or evil motive on the part of the defendant such that the conduct may be called willful or wanton.

If you do award punitive damages, you should do so using calm discretion and sound reason. Sympathy for or dislike of any party should not influence your decision.

**TAB 3**

**DEFENDANTS' PROPOSED SPECIAL VERDICT FORM**

<u>SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT</u>

I   Has the plaintiff proved by a preponderance of the evidence that she was discriminated against on the basis of her gender?

_____ YES          _____ NO

   If your answer to Question 1 is "YES," then go to Question 2.  If your answer to Question 1 is "NO," you need not proceed any further.

II  Has the plaintiff proved by a preponderance of the evidence that James Keenan subjected her to sexual harassment?

_____ YES          _____ NO

   If your answer to Question 2 is "YES," then go to Question 3.  If your answer to Question 2 is "NO," you need not proceed any further.

III Has the plaintiff proved by a preponderance of the evidence that James Keenan's sexual harassment was so severe and pervasive that a reasonable person in the plaintiff's position would have found that the conduct created a hostile, intimidating or abusive work environment?

_____ YES          _____ NO

   If your answer to Question 3 is "YES," then go to Question 4.  If your answer to Question 3 is "NO," you need not proceed any further.

IV  Has the plaintiff proved by a preponderance of the evidence that she was intimidated or humiliated in a way which substantially affected her job performance or the conditions of her employment?

_____ YES          _____ NO

   If your answer to Question 4 is "YES," then go to Question 5.  If your answer to Question 4 is "NO," you need not proceed any further.

V   Did management level employees of defendant Fred Williams know, or should they have known, about the sexual harassment of the plaintiff, if any, and fail to take prompt and reasonable action to stop the harassment?

_____ YES          _____ NO

   Go to Question 6.

VI  Did management level employees of defendant Linbeck know, or should they have known, about the sexual harassment of the plaintiff, if any, and fail to take prompt and reasonable action to stop the harassment?

        _____ YES        _____ NO

If your answered "YES" to <u>one or more</u> of Questions 4, 5, and 6, proceed to Question 7. If you answered "NO" to <u>each of</u> Questions 4, 5, and 6 above, you need not proceed any further.

<u>DAMAGES</u>

VII Do you find that the plaintiff has proved by a preponderance of the evidence that she has suffered actual emotional distress that was caused by the defendants' alleged acts of discrimination and that she should be compensated by an award of money damages?

        _____ YES        _____ NO

If you answered "YES" to Question 7, please proceed to Question 8.  Otherwise, you need not proceed any further.

VIII  If you answered "YES" to Question 7, please state the amount, if any, which will compensate the plaintiff for any emotional distress resulting from the hostile work environment.

As to defendant James Keenan:

_____ (in words)

$_____ (in figures)

As to defendant Fred Williams (only if you answered Questions 5 and 7 "YES"):

_____ (in words)

$_____ (in figures)

As to defendant Linbeck (only if you answered Question 6 and 7 "YES"):

_____ (in words)

$_____ (in figures)

_____          _____
Foreperson


_____          _____


_____          _____


_____          _____


_____          _____


_____          _____


_____          _____


DATE:  _____